BERNARD DELEON VALENCIA
Name

Register No. 02100-093
Prison Identification/Booking No.

1705 E, Hanna Rd. #. C-201; Eloy, AZ 85231
ADDRESS or PLACE OF CONFINEMENT

Note: It is your responsibility to notify the Clerk of
Court in writing of any change of address.

Note: If represented by an attorney; his name, address
& telephone number.

F I L E D
DISTRICT COURT OF GUAM
FEB 18 2003
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA,
                              PLAINTIFF,

v.

BERNARD DELEON VALENCIA

FULL NAME OF MOVANT (Include name under which you
                     were convicted)

                              PETITIONER.

CASE NUMBER

CASE No. CV- **03-00006**
To be supplied by the Clerk of the
United States District Court

CASE No. CR- 00-00129-001
Criminal case under which sentence was imposed

MOTION TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY
28 U.S.C. § 2255

## INSTRUCTIONS AND INFORMATION - READ CAREFULLY

This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. Any false statement of a material may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the f Where more room is needed to answer any question use reverse side of sheet.

Additional pages are not permitted. No citation or authorities need be furnished. If briefs or arguments are submitted, they should be subm in the form of a separate memorandum.

Upon receipt, your motion will be filed if it is in proper order. NO FEE is required with this motion.

If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may re permission to proceed in forma pauperis, in which event you must execute the declaration on the last page, setting forth information establi your inability to pay costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complet certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

COPY

Case 1:03-cv-00006   Document 1   Filed 02/18/2003   Page 1 of 31

Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each judgment.

Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

When the motion is fully completed, the original and 3 copies must be mailed to the Clerk of the United States District Court, whose address is 312 N. Spring Street, Los Angeles, Ca 90012.

---

ATTN: Intake/Docket Section

---

Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MOTION

Name and location of court which entered the judgment of conviction under attack UNITED STATES DISTRICT COURT DISTRICT COURT OF GUAM, TERRITORY OF GUAM

Date of judgment of conviction March 11, 2002

Length of sentence Fifty seven (57) mths Sentencing Judge John S. Unpingco

Nature of offense or offenses for which you were convicted 21 U.S.C. §§ 952(a), 960, 963. Conspiracy to import Methamphetamine (one count).

What was your plea? (Check one)

(a) Not guilty        ( )

(b) Guilty          (X)

(c) Nolo Contendere   ( )

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details _____

Kind of trial: (Check one)
(a) Jury          ( )
(b) Judge only     ( )

Did you testify at the trial?    Yes ( )    No ( )

Did you appeal from the judgment of conviction?    Yes ( )    No (X)

9. If you did appeal, answer the following:

    (a) Name of Court _____

    (b) Result _____

    c Date of Result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motion with respect to this judgment in any federal court? Yes ( )  No (X)

11. If your answer to 10 was "yes", give the following information:

    (a)    (1) Name of Court _____

           (2) Nature of Proceeding _____
_____
_____

           (3) Grounds raised _____
_____
_____
_____
_____
_____
_____

           (4) Did you receive an evidentiary hearing on your petition, application or motion?

               Yes ( )    No ( )

           (5) Result _____

           (6) Date of result _____

    (b)    (1) Name of Court _____

           (2) Nature of Proceeding _____
_____

           (3) Grounds raised _____
_____
_____
_____
_____
_____

           (4) Did you receive an evidentiary hearing on your petition, application or motion?

               Yes ( )    No ( )

           (5) Result _____

           (6) Date of result _____

    c (1) Name of Court _____

           (2) Nature of Proceeding _____

           (3) Grounds raised _____
_____
_____
_____
_____
_____

Case 1:03-cv-00006   Document 1   Filed 02/18/2003   Page 3 of 31

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ( )    No ( )

(5) Result

(6) Date of result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion

(1) First petition, etc.        Yes ( )        No ( )

(2) Second petition, etc.       Yes ( )        No ( )

(3) Third petition, etc.        Yes ( )        No ( )

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

2. State concisely every ground on which you claim that you are being held unlawfully.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement prece letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being hel custody unlawfully.

If you selected one or more of these grounds for relief, you must allege facts in support of the grounds listed below. The petition wil returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

c Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: ___ INEFFECTIVE ASSISTANCE OF COUNSEL. FOUR INSTANCES.

(1) COUNSEL FAILED TO INVESTIGATE THE FACTS AND CIRCUMSTANCES SURROUN-

Supporting FACTS (tell your story briefly without citing cases or law): DING THE CHARGE.

(2) COUNSEL FAILED TO FILE ANY PRE-ARRAIGNMENT MOTIONS.

(3) COUNSEL FAILED TO ADVISE ME ABOUT THE IMMIGRATION CONSEQUENCES
OF MY GUILTY PLEA.

(4) COUNSEL FAILED TO ADVISE ME ABOUT THE NATURE OF THE CHARGE
AND CONSEQUENCES OF THE PLEA.

B. Ground two: GUILTY PLEA WAS NOT ENTERED KNOWINGLY, VOLUNTARILY, AND INTELLI-

GENTLY BECAUSE OF A LACK OF UNDERSTANDING OF THE CHARGE DUE TO COUNSEL'S

Supporting FACTS (tell your story briefly without citing cases or law): FAILURE TO DISCUSS IT WITH ME.

SEE ATTACHED SUPPORTING MEMORANDUM FOR DETAILS.

C. Ground three: CONVICTION OBTAINED BY USE OF EVIDENCE GAINED PURSUANT TO
AN UNCONSTITUTIONAL SEARCH AND SEIZURE.

Supporting FACTS (tell your story briefly without citing cases or law): _____

SEE ATTACHED SUPPORTING MEMORANDUM FOR DETAILS.

D. Ground four: CONVICTIO OBTAINED BY USE OF EVIDENCE OBTAINED PURSUANT TO AN
UNLAWFUL ARREST    E. SELECTIVE PROSECUTION.

Supporting FACTS (tell your story briefly without citing cases or law): _____

SEE ATTACHED SUPPORTING MEMORANDUM FOR DETAILS.

Case 1:03-cv-00006    Document 1    Filed 02/18/2003    Page 5 of 31

13. If any of the grounds listed in 12A, B, C and D were not previously presented, state briefly what grounds were not presented, and give your reasons for not presenting them:

_THIS IS THE FIRST FORUM FOR PRESENTING THE ABOVE GROUNDS._

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

Yes ( )  No (x )

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attached herein:

(a) At preliminary hearing Robert E. HARTSOCK, ASSISTANT FEDERAL PUBLIC DEFENDER 400 ROUTE *, SUITE 310., FIRST HAWAIIAN BANK BLDG., MONGMONG, GUAM 96927

(b) At arraignment and plea SAME

(c) At trial NO TRIAL

(d) At sentencing J. BASIL O'MALLAN III 400 ROUTE 8, SUITE 310. FIRST HAWAIIAN BANK BLDG., MOMGMONG, GUAM 96927

(e) On appeal NO APPEAL

(f) In any post-conviction proceeding THIS IS THE FIRST POST-CONVICTION PROCEEDING

(g) On appeal from any adverse ruling in a post-conviction proceeding N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?  Yes ( )  No (X )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes ( )  No (X )

(a) If so, give the name and location of court which imposed sentence to be served in the future:

(b) And give date and length of sentence to be served in the future:

Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed sentence to be served in the future?  Yes ( )  No ( )

WHEREFORE, movant prays that the court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on February 6, 2003
(Date)

_____
Signature of Movant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| _____ UNITED STATES OF AMERICA ___ , | ) | |
| | ) | |
| **vs.** | ) | DECLARATION IN SUPPORT |
| | ) | OF REQUEST TO PROCEED |
| _____ BERNARD DELEON VALENCIA _____ | ) | **IN FORMA PAUPERIS** |
| | ) | |
| _____ | ) | |
| _____ | ) | |

I, _BERNARD DELEON VALENCIA_____, declare that in support of my pleadings to proceed in the above entitled case without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; and that I believe I am entitled to relief.

1.  Are you presently employed? Yes ( )  No ( X )
    a.  If the answer is "yes," state the amount of salary or wages per month, and give the name and address of your employer:

    _____

    b.  If the answer is "no," state the date of last employment and the amount of salary and wages per month which you received:

    _____April 5, 2002    $1200.00/mth._____

2.  Have you received within the past twelve months any  money from any of the following sources:

    |  | Yes | No |
    |---|---|---|
    | a. Business, profession, or form of self-employment? | ( ) | ( X ) |
    | b. Rent payments, interest, or dividends? | ( ) | ( X ) |
    | c. Pensions, annuities, or life insurance payments? | ( ) | ( X ) |
    | d. Gifts or inheritances? | ( ) | ( X ) |
    | e. Any other sources? | ( ) | ( X ) |

    If the answer to any of the above is "yes," describe each source of money an state the amount received from each during the past twelve months:_____

    _____

    _____

3.  Do you own cash or do you have money in a checking or savings account?
    Yes ( X )  No ( )   (Include any funds in prison accounts.)

**I.F.P. (Revised 6/1/93)**

1

If the answer is "yes," state the total value of the items owned:

$1500.00 (household furnishings)

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing?  Yes ( )  No ( X )

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support:

| | | |
|---|---|---|
| Vedalema Sablan Valencia | (wife) | |
| Velmarie Valencia | (daughter) | 6yrs. |
| Vernadal Valencia | (daughter) | 3yrs. |
| Veralyn Valencia | (daughter) | 1mth. |

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____    _____
                    (date)                       Signature of Petitioner
                                            (Required as to each petitioner)

## CERTIFICATE

I hereby certify that the above named petitioner currently has the sum of $ 9.79 on account to his credit at the Eloy Detention Center institution where he is confined.  I further certify that petitioner likewise has the following securities to his credit according to the records of said _____ institution: _____

Date: 2/6/03                    _chosen signature_
                                Authorized Officer of Institution
                                Inmate Funds / Eloy Detention
                                Title of Officer

2

Bernard Deleon Valencia
Register No. 02100-093
Eloy Detention Center, C-201
1705 East Hanna Road
Eloy, AZ 85231-9612

Petitioner, pro se

UNITED STATES DISTRICT COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,          )
                                   )          [Case No. 00-00129-001]
          v.                       )
                                   )     **MEMORANDUM IN SUPPORT**
BERNARD DELEON VALENCIA,           )     **OF MOTION PURSUANT TO**
                                   )       **TITLE 28, U.S.C.,**
          Petitioner.              )        **SECTION 2255.**
                                   )
_____)

Bernard Deleon Valencia (hereinafter "petitioner") is in custody pur-
suant to a sentence imposed by this court. This memorandum supports
his motion attacking his conviction and sentence.

                          JURISDICTION

     The District Court has jurisdiction under 28 U.S.C. § 2255.

                    INTRADISTRICT ASSIGNMENT

     The case at the trial level was before the Honorable John S. Un-
pingco, U.S. District Judge, of the territory of Guam.

              STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether petitioner's right to effective assistance of counsel
     was denied when Attorney Robert E. Hartsock failed to conduct
     a thorough investigation of the facts and circumstances sur-
     rounding the charges.

2.   Whether petitioner's right to effective assistance of counsel
     was denied when Attorney Robert E. Hartsock failed to file any
     pretrial motions.

3. Whether petitioner's right to effective assistance of counsel was denied when Attorney Robert E. Hartsock failed to advise petitioner of the immigration consequences to a plea of guilty.

4. Whether petitioner's right to effective assistance of counsel was denied when Attorney Robert E. Hartsock failed to advise him of the nature of the charge, the possible defenses, and consequences to a plea of guilty.

5. Whether petitioner's plea of guilty was made without an under-standing of the charge and consequences attendant thereto, and if so, then it was not made knowingly, voluntarily, and intel-ligently.

6. Whether petitioner's conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

7. Whether petitioner's conviction was obtained by use of evidence obtained pursuant to an unlawful arrest.

## PROCEDURAL HISTORY

On October 19, 2000, petitioner was arrested without warrant, and vehicle was searched without warrant or justifiable cause. Peti-tioner was not advised of his Miranda rights, taken to the DEA's of-fice for questioning, and after three or four hours of interrogation without his attorney present, he was released. On October 20, 2000, petitioner was taken from his home by the DEA agents and taken to the office of the Assistant Federal Public Defender, Robert E. Hartsock. After a personal history and a statement of the facts of the case, Mr. Valencia was told how much time he was facing, and advised to plead guilty and cooperate with the government. On October 27, 2000, seven days later, said counsel asked Mr. Valencia to sign a multipage document. Mr. Valencia never read the document, there was no discus-sion of the contents, and he didn't know he signed a plea agreement.

On November 8, 2000, an order appointing Mr. Hartsock as defense counsel was filed, and Mr. Valencia was charged with one count of vio-lating 21 USC §§ 952(a), 960, 963, Conspiracy to import methampheta-mine. He waived reading of the indictment before Judge Unpingco, and

pleaded guilty. The plea agreement was accepted by the court, entered into the record, and sealed. A status hearing was scheduled for February 27, 2001.

On December 6, 2000, a stipulation regarding relevant conduct was filed. On February 27, 2001 the status hearing was continued until June 7, 2001. On June 6, 2001, a motion to unseal the records and to vacate the status hearing scheduled for June 7, 2001 was filed. The status hearing was rescheduled for September 6, 2001. On August 23, 2001, a motion modifying conditions of release was filed. On August 28, 2001, a motion to continue sentence hearing was filed and sentencing rescheduled for November 15, 2001. On November 7, 2001, sentencing was continued until February 20, 2002. On February 12, 2002, an order extending the sentencing date to February 28, 2002 was filed. On February 28, 2002, petitioner was sentenced to fifty seven (57) months incarceration, and sixty (60) months of supervised release. On March 11, 2002, the original judgement was amended to include the Judge's recommendation for incarceration in a federal facility in the State of California. Petitioner surrendered to serve his sentence on April 16, 2002.

The judgement and conviction was entered on March 14, 2002. No appeal was taken; the case became final ten (10) days later on March 24, 2002.


FACTUAL BACKGROUND

Bernard Deleon Valencia is a 32-year old married father of three who migrated from the Philippines to Guam at the age of 19. He's been working hard ever since to support his wife and three children, the last of whom was born during his incarceration and he has not seen.

On October 19, 2000 he was asked by Imelda Bondoc to pick up
a package from an individual named Edwin for her because she did
not have transportation (something was wrong with her car). He ad-
mitted that he was well aware that he was picking up "ice" because
he had done it on two prior occasions. After picking up the sandals
(now a new method of transportation), he returned home; but just
as he pulled up next to the front door of his apartment and was
about to park his Nissan pick-up truck, a police car with flashing
lights seemed to suddenly appear from nowhere behind him. As he got
out of his pick-up, he was ordered to put his hands up, was approa-
ched by a police officer who handcuffed him. Almost simultaneously,
a fleet of four or five cars with spotlights also barricaded him.

Mr. Valencia now found himself surrounded by Drug Enforcement
Agents. He was first asked by one of the agents, "Why are you hand-
cuffed?" When he tried to find out the reason for this massive show
of force, he was told that they were just there to question him.
They then told him that he had a "package" they were looking for,
and they would like to search his vehicle. Without a warrant, they
proceeded to do so, and subsequently found a pair of sandals. Mr.
Valencia was then uncuffed, and told to sign some document which he
was not able to read because of the darkness. The agent never told him
what document he was signing. He was then asked to accompany the
agents to the airport where they said they would x-ray the sandals,
and he did. He was taken in their car to the airport where the san-
dals were x-rayed, and he was shown x-ray pictures of the sandals
which allegedly showed "foreign objects" in their soles. Mr. Valen-
cia was told that the soles contained six baggies containing "ice",
even though the sandals' soles were never opened in his presence,

1  and he never saw or was shown any "ice".

2  Mr. Valencia was then taken to the DEA's office and was ques-
3  tioned about his involvement in the scheme for more than three hours.
4  During the process he was reminded that he was facing five to forty
5  years imprisonment, and that he should tell them the truth. "The
6  truth shall set you free", they kept on reminding him. He told them
7  everything he knew including the names of the participants, that he
8  had done it twice before (using soap, not sandals), and was paid
9  about $1500-$2000 each time. He never said that he was a co-conspi-
10  rator. The DEA agents finally asked, and he agreed to work with them
11  in a "sting" operation to effect the arrest of the other partici-
12  pants. It would be around midnight before he returned home that day.

13  Mr. Valencia was advised by the DEA agents to report to their
14  office on a daily basis, and the following day he was taken to the
15  office of the Assistant Federal Public defender, Robert E. Hartsock.
16  Mr. Hartsock, after the usual identifying and personal history tak-
17  ing, asked him to tell his story. He gave Mr. Hartsock a comprehen-
18  sive and truthful account of his involvement in the scheme. After
19  relating his story, Mr. Hartsock promptly told him to plead guilty
20  and cooperate with the government. The next meeting with Mr. Hart-
21  sock occurred on October 27, 2000, a week later, after he was called
22  to sign a Plea Agreement. At that meeting there was never a discus-
23  sion of the advantages or disadvantages of the plea agreement prof-
24  fer, the elements of the offense, what the government would have to
25  prove, what rights he would be giving up, or the possibility of ap-
26  pealing. There was no discussion of the plea proffer whatsoever.

27  In the ensuing months Mr. Valencia continued to cooperate with
28  the government, giving specific dates, times, flights, and persons

1  involved in transportation but, for whatever reasons, no one was
2  arrested. He also made himself available for sting operations as re-
3  quested by the DEA agents. He continued to report as requested by
4  his porbation officer, and was sentenced on February 28, 2002. On
5  March 11, 2002 an amendment to the judgement was filed at which time
6  the imposition of judgement became final. Mr Valencia self surren-
7  dered on April 16, 2002.

8

9              THE INTERACTION BETWEEN PETITIONER AND COUNSEL.

10     Petitioner first met counsel Robert E. Hartsock on October 20,
11  2000 when petitioner was brought to the Public Defender's office by
12  the DEA agents. Mr. Hartsock took a personal history and other gene-
13  ral information. He became aware of the petitioner's alienage. He
14  asked, and the petitioner told him everything about his involvement
15  in the alleged scheme of importing "ice" from the Philippines into
16  Guam. Petitioner told his story truthfully and candidly,- he was told
17  by the DEA agents that he would be free and not prosecuted if he told
18  the truth and cooperated. After telling his story, counsel advised
19  petitioner to "plead guilty and cooperate with the government" be-
20  cause he was facing time.

21     The next meeting with AFPD, Robert E. Hartsock, was on October
22  27, 2000, when petitioner was asked to sign a plea agreement. There
23  was no discussion whatsoever of the agreement; as a matter of fact,
24  Mr. Valencia was never told he had a plea proffer, didn't read it,
25  signed it because he was told to, did not know what he was signing,
26  and was never given a copy. He had no further meetings with Mr. Hart-
27  sock until arraignment on November 8, 2000. He case was transferred
28  to Assistant Federal Public Defender (AFPD), J. Basil O'Mallan III.

Mr. Valencia's first meeting with AFPD, O'Mallan was during a lunch break from his work. They met at a Kentucky Fried Chicken restaurant near his place of employment. The conversation was basically an introduction since he was replacing Mr. Hartsock as his counsel. The conversation was very non-specific; basically information gathering about himself and his family, reiterating the seriousness of his crime, how much time he was facing, and the need for him to cooperate with the government.

The second meeting was at Mr. Valencia's home where Mr. O'Mallan met his family. This, again, was a general conversation reminiscent of the first meeting, but in the presence of his family. Mr. Valencia specifically recalled asking him, in the presence of his family, if he would be deported, to which Mr. O'Mallan replied "I don't think so".

The third meeting was at sentencing on February 28, 2002. There was very little conversation, and certainly no discussion of appeal.

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

At critical stages, attorney-of-record, Assistant Federal Public Defender, Robert E. Hartsock, provided incompetent, ineffective legal representation.

The Sixth Amendment's guarantee of the right to assistance of counsel carries with it the right to <u>effective</u> assistance of counsel. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). The appointment of counsel is only the starting point for fulfilling the guarantee; it is counsel's actual performance at all stages of the proceedings that must be examined. <u>United States v. Cronic</u>, 466 US 648, 654-55 (1984). <u>See generally</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

1    In order to prove his claim of ineffective assistance of counsel,

2    petitioner must satisfy a two prong test, showing that (1) counsel's

3    representation fell below an objective standard of reasonableness mea-

4    sured by prevailing professional norms, and (2) there is a reasonable

5    probability that but for counsel's unprofessional performance the out-

6    come of the proceedings would have been different, i.e., prejudice.

7    As will be argued below, counsel's failure in his duty to effectively

8    represent petitioner resulted in his plea of guilty and the loss of

9    his right to appeal. Moreover, since petitioner would never have con-

10   sented to pleading guilty but for counsel's ineffective representa-

11   tion, his constitutional right to trial was denied.

12

13   I A. COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO CONDUCT

14      A THOROUGH INVESTIGATION OF THE FACTS AND CIRCUMSTANCES SUR-

15      ROUNDING THE CHARGE.

16

17      The American Bar Association ("ABA") states counsel's duty:

18         It is the duty of the lawyer to conduct a prompt investi-
           gation of the circumstances of the case, and to explore
19         all avenues leading to facts relevant to the merits of the
           case and the penalty in the event of conviction. The inves-
20         tigation should always include efforts to secure informa-
           tion in the possession of the prosecution and law enforce-
21         ment authorities. The duty to investigate exists regardless
           of the accused's admissions or statements to the lawyer of
22         facts constituting guilt, or the accused's stated desire to
           plead guilty.

23   ABA Standard 4-4.1, 2nd. edition, 1980.

24      From the information contained in the government's Information,

25   and Mr. Valencia's statement of his involvement, this charge cries

26   out for some sort of investigation, even if a cursory one at least.

27   The Information revealed that the DEA Task Force received an anony-

28   mous phone call stating that Mr. Valencia was involved in importing

crystal methamphetamine a.k.a. "ice" into Guam from the Philippines. There were no specifics like date, time, and quantity, or a description of the carrier; only that the "ice" would be concealed inside packages of body soap. This is a far cry from credible information. The second call was on October 19, 2000, still from an unnamed source claiming that Valencia was expecting a shipment of "ice" that evening from the Philippines. There is no information as to whether or not the DEA had attempted to establish the credibility of any of the information received. Mr. Valencia's residence was placed under surveillance at 6:15pm. on October 19, 2002, and it continued until Mr. Valencia was observed to leave his residence at about 8:40pm in a 1995 purple Nissan pickup truck. He was followed and surveilled until he arrived to the Harmon Cliff Line area near Two Lover's Point, Harmon, Guam where surveillance ceased when the car arrived at the old Philippines Social Gambling Hall. There is no mention of observing Mr. Valencia picking up or being given a package by Edwin or being followed back to his residence. He was arrested just as he parked in front of his apartment.

Any investigation, even a cursory one, would have revealed that 1) probable cause did not exist; 2) this was an invalid arrest; and 3) a warrantless search and seizure, the fruits of which could have been subjected to suppression. Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested. See <u>Beck v. Ohio</u>, 379 US 89, 91; 85 S.Ct. 223 (1964). The reliability of the information is the primary ingredient in making the determination of probable cause and, in the instant case,

1  there is not a scintilla of evidence to show that this was trustwor-
2  thy information or that it came from a reliable source. Even though
3  the determination that probable cause exists for a warrantless search
4  is fundamentally a factual analysis that must be performed by the
5  officer(s) on the scene, "probable cause must ultimately be determined
6  by the courts, not police", US v. Glasser, 750 F.2d. 1197, 1206 (3rd.
7  Cir. 1984); US v. Myers, 308 F.3d. 251 (3rd. Cir. 2002).

8      From the information in the government's Information, there is
9  mention that Mr. Valencia was observed to be driving above the posted
10 speed limit, and was subsequently stopped by two Guam Police patrol
11 units. It would seem from the information that Mr. Valencia was stop-
12 ped because of speeding, or it was made to appear as such to justify
13 the stop. But there was never any discussion with Mr. Valencia by the
14 arresting officer(s) about speeding, and a speeding ticket was never
15 issued. This, one has to assume, must have been used as a pretext for
16 the stop and justification for the subsequent arrest, search, and sei-
17 zure. Mr. Valencia said that he was ordered out of his pickup, and
18 was immediately handcuffed by the Guam Police officer without expla-
19 nation. This is certainly not the "usual and customary" tactics used
20 by the Guam police for handling a traffic violator. Mr. Valencia ada-
21 mantly denies that he was read his Miranda rights either before or
22 after his arrest. As a matter of fact, when the DEA agents asked of
23 Mr. Valencia why he was handcuffed, Mr. Valencia asked the same ques-
24 tion and was told, "We just want to ask you some questions". "You have
25 something we are lookin for"; but they never said what, and proceeded
26 to search his vehicle. Mr. Valencia was clearly arrested before his
27 car was searched and any suspected contraband found, and without his
28 Miranda rights being read. This is illegal!!

A search without a warrant based on probable cause is illegal, unless the Government can show that it falls into one of those limited exceptions recognized by law, US v. Alexander, 835 F.2d. 1408, (11th. Cir. 1988). One of the exceptions deals with the search of automobiles. Searches of automobiles may be conducted without a warrant if 1) there is probable cause to believe vehicle contains contraband or other evidence which is subject to seizure under the law, and 2) exigent circumstances necessitate a search and seizure, Id at 1409. See also Katz v. US, 389 US 341, 357; 88 S.Ct. 507, 514, 19 L.Ed. 2d. 576 (1967). The unreliability and untrustworthiness of the information in this case has alrady been established. But let us say, arguendo, that the calls of September 5, and October 19, 2000 were enough to effectuate an investigation, then the informant's reliability should have also been established in order to warrant the use of the "tip". This lack of information in the Information establishing the credibility, or even identity, of the informant helps confirm the lack of probable cause. The courts have held that the fact that an automobile is involved, whether mobile or parked, creates the "exigent" circumstances necessary for fulfillment of part (2) of the exceptions. In the instant case there were no exigent circumstances, i.e. the government knew in advance and had enough time, if they believed the information to be credible, to procure a search warrant. Remember, they had enough time to plan a surveillance of Mr. Valencia's residence at 6:15pm. the evening of October 19, 2000.

The Supreme Court has said that "[the warrant requirement] is not an inconvenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check

the 'well-intentioned but mistakenly overzealous executive officers'. ...." Coolidge v. New Hampshire, 403 US 481; 91 S.Ct. 2046 (1971). When the constitutional validity of an arrest without warrant was challenged, it was incumbent on the prosecution to show with considerably more specificity than mere fact that someone told police officers something about defendants, what informer, if any, actually said to police officers making arrest without warrant, and why officers thought the information was credible. Good faith on the part of the arresting officer is not sufficient to withstand attack on constitutional validity of arrest without warrant. See US v. Myers, supra. The Supreme Court has emphasized on more than one occasion that before a warrantless search is justified, the "overriding standard of probable cause" must be satisfied. California v. Carney, 471 US 386, 390; 105 S.Ct. 2066, 2068 (1985); Chambers v. Maroney, 399 US 42, 51, 90 S.Ct. 1975, 1981 (1970). There is no doubt that when one examines the totality of the information, the circumstances, and the inferences that flowed therefrom, it is evident that there was not probable cause, an illegal arrest was made, and a warrantless search and seizure occurred. Failure to obtain warrant vitiates the arrest and subsequent seizure. Coolidge v. New Hampshire, supra.

The duty to investigate is part of a defendant's right to reasonably competent counsel:

> The principle is so fundamental that the failure to conduct a reasonable pretrial investigation may in itself amount to ineffective assistance of counsel.

United States v. Tucker, 716 F.2d. 576, 583 n.16 (9th. Cir. 1983) (citing McQueen v. Swenson, 498 F.2d. 207, 217-218 (8th. Cir. 1974)). It would seem reasonable that at a minimum every defense counsel should make some sort of investigation, even if a cursory one, to ver-

1   ify and elucidate the facts and circumstances of a charge. Moreover,

2   the very charge itself should be subjected to such in order to see if

3   it is the correct charge. If defense counsel chooses not to investi-

4   gate the circumstances surrounding a charge, then it has to be an

5   informed decision based on factual information such that it would

6   make an investigation unnecessary. In petitioner's case there was no

7   investigation; no one was interviewed; and defense counsel completely

8   relied on the government's version,- Mr. Valencia was arrested and

9   therefore he is guilty. In Strickland, supra, the Court agreed that

10  "the Sixth Amendment imposes on counsel a duty to investigate, because

11  reasonably effective assistance must be based on professional deci-

12  sions, and informed legal choices can only be made after investigation

13  of options.""This includes a duty to investigate defendant's 'most

14  important defenses'". Sanders v. Ratelle, 21 F.3d. 1457 (9th. Cir.

15  1994). It is well known that the Public Defender's Office has staff

16  investigators to handle such matters, and the fact that none was done

17  despite the questionable circumstances of the arrest, his almost

18  three hours of interrogation by the DEA agents without being read his

19  Miranda rights and having his lawyer present, and being taken by the

20  same DEA agents to the Public Defender's Office the next day, renders

21  the entire process malodorous. This lack of investigation, coupled

22  with the fact that counsel advised defendant to"plead guilty and co-

23  operate with the government"after the first interview and meeting,

24  without any government discovery material, cannot rise to the level

25  of "reasonably effective assistance" under any circumstance. And "if

26  counsel fails to subject the prosecutor's case to meaningful adversa-

27  rial testing, then there has been a denial of the Sixth Amendment ri-

28  ghts that makes the adversary process itself presumptively unreliable"

　US v. Chronic, 104 S.Ct. 2047 (1984).

2

### 1.B. COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO FILE ANY PRETRIAL MOTIONS.

From the information in the government's Information which was the basis for arresting and subsequently charging the petitioner with "conspiracy to import methamphetamine 'ice' ", it is plain to see that the credibility of that information is very much wanting, and that the identity of the informant was not established, much less the reliability of that person. This, of course, is the foundation on which probable cause is built, and so probable cause was not established. If there is no probable cause, then the stop is illegal, and the subsequent arrest, search and seizure also become illegal. Any reasonably competent counsel could have found many areas in the government's Information subject to pretrial motions. Counsel could have 1) let the court decide if there was probable cause, 2) contested the legality of the arrest, 3) the legality of the search and seizure, and whether Mr. Valencia knowingly and voluntarily consented to search of his vehicle, 5) moved to suppress the evidence found as a result of the search, and 6) moved to suppress Mr. Valencia's statements in absence of counsel, and if he knowingly and intelligently waived any rights. These issues must be determined by the court because they are mixed questions of fact and law. There is no doubt that counsel's performance, by any acceptable measure, fell below an objective standard of reasonableness.

///

///

///

1.C. COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE AD-
VISED A GUILTY PLEA WITHOUT CONSIDERATION OF THE COLLATERAL IMMIGRA-
TION CONSEQUENCES.

Counsel knew that petitioner was not a citizen or national of
the United States from the initial meeting. Since the passage of the
Antiterrorist and Effective Death Penalty Act of 1996 ("AEDPA") and
the Illegal Immigration Reform and Immigrant Responsibility Act of
1996 ("IIRIRA"), there is virtually no relief from "removal",--the
new term for deportation, for anyone sentenced to one year or more in
prison. Petitioner's case is squarely impacted by these immigration
laws.

Counsel should have recognized the "harsh collateral consequence"
to the plea of guilty but, on the contrary, downplayed it when he was
specifically asked by Mr. Valencia, "Will I be deported?" and he res-
ponded, "I don't think so". It behoves any counsel who is represen-
ting an alien to either familiarize himself with the immigration laws
affecting his client, or seek professional advice from one who does.
This knowledge and awareness of INS laws is critical to the kind of
plea or sentence arrangement counsel makes on behalf of his alien
client.

The United States Supreme Court recognized long ago that "depor-
tation is a drastic measure and at times the equivalent of banishment
or exile." Fong Haw Tan v. Phelan, 333 US 6, 10 (1948). "To banish
[non-citizens] from home, family, and adopted country is punishment of
the most drastic kind...." Lehman v. Carson, 353 US 685, 691 (conc.
opn. of Black, J.). Petitioner has been in Guam since September 1989,
He is married to a US citizen and has three US citizen children, all
of whom depend on him for financial support. Removal from Guam will

indeed be a drastic punishment.

In *Magana-Pizano v. INS*, 200 F.3d. 603, 611-12 (9th. Cir. 1999), the appellate court wrote:

> That an alien charged with a crime... would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented.

Also see *Wallace v. Reno*, 24 F. Supp. 2d. 104. 110 (D. Mass. 1998), aff'd, 194 F.3d. 279 (1st. Cir. 1999) (noting that it is widely recognized as a violation of an attorney's professional duty to not advise client of immigration consequences to a plea or conviction); *Mojica v. Reno*, 970 F.Supp. 130, 177 (E.D.N.Y. 1997), aff'd in part, dismissed in part, *Henderson v. INS*, 157 F.3d. 106 (2d. Cir. 1998) (listing bar and defender associations that require their members to advise clients of the deportation consequences of a plea).

Counsel's failure to advise petitioner of the immigration consequences to a guilty plea that he was urged to accept was in violation of many professional standards. See ABA Standards for Criminal Justice, Pleas of Guilty, Standards 14-3.2, comm. at 75 (2d. ed. 1982) (providing that where it is apparent that a defendant faces deportation as a result of conviction, counsel "should fully advise the defendant of these consequences"); National Legal Aid and Defender Association Performance Guidelines for Criminal Defense Representation, Guideline 6.2 (a)(3) and commentary 1994) (recognizing that it is defense counsel's duty to "be fully aware of, and make sure that the client is fully aware of... consequences of conviction such as deportation"); 3 Bender's Criminal defense Techniques (1999) § 60 A.01 and § 60 A.2[2] ("preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. Thus, the immigration consequences of a prosecution may to-

tally alter the strategies chosen... a[ny] attorney who suspects that his client is an alien has a duty to inquire and to protect his client's immigration status. Pleas and admissions must be approached with caution and with knowledge of the consequences..."). Since the petitioner's counsel did not discuss anything whatsoever about immigration with him, he certainly had no idea that as an "aggravated felon" he would be deported from the United States or Guam for at least 20yrs.

I.D. <u>COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ADVISE PETITIONER OF THE NATURE OF THE CHARGE AND THE CONSEQUEN- TO A PLEA OF GUILTY</u>.

When counsel had no discussions about the nature of the charge, the elements of the offense, and the consequences of pleading guilty, he rendered ineffective assistance of counsel. This is addressed more fully in part II of this brief and is adopted herein by reference.

II. <u>PETITIONER'S PLEA OF GUILTY WAS NOT MADE VOLUNTARILY, KNOWINGLY, OR INTELLIGENTLY OR WITH AN UNDERSTANDING OF THE CHARGE AND THE CONSEQUENCES OF THE PLEA.</u>

Mr. Valencia has maintained, and avers, that he never saw or had any discussions with his counsel about any discovery material. His defense counsel never discussed or showed him the information in the Information that formed the basis of the charge of "Conspiracy to import methamphetamine" in violation of 21 USC 952(a), 960, 963. His counsel never duscussed the elements of the charge, what the govern- ment needed to prove to substantiate the charge, or what possible de- fenses were available to him to rebut or refute the charge.

1   The record shows that on October 27, 2000, just barely one week
2   after Mr. Valencia saw his counsel for the first time, and with no
3   intervening conversations or discussions, he was asked to sign a plea
4   agreement,- a multipage document which he never read, was never told
5   what it was, was never explained to him, including what rights he had
6   or was giving up and the consequences thereof. Consequently, Mr. Val-
7   encia argues, his plea could not have been knowing and intelligent
8   because his counsel failed to investigate the charge against him.
9   Without such investigation and preparedness, counsel was unable to
10  assist him in understanding the charge and the consequences of his
11  plea. In order for Mr. Valencia's plea to have been knowing and volun-
12  tary, he must have been reasonably informed of "the nature of the
13  charges against him, the factual basis underlying those charges, and
14  the legal options and alternatives that are available". Lo Conte v.
15  Dugger, 847 E.2d. 751 (11th. Cir. 1988). Counsel's behavior cannot be
16  presumed to have reached "an objective standard of reasonableness mea-
17  sured by prevailaing professional norms" according to Strickland .

18      A defendant who pleads guilty must be aware of the "relevant cir-
19  cumstances and likely consequences" surrounding the plea. Brady v. US,
20  397 US 742, 748; 90 S.Ct. 1463, 1469; 25 L.Ed. 2d. 747, (1970). A def-
21  endant who has not received the effective assistance of counsel, and
22  Mr. Valencia did not, may not be bound by the plea if as a result the
23  plea was not an informed and voluntary waiver of the defendant's ri-
24  ghts", see McCoy v. Wainwright, 804 F.2d. 1196, 1198 (11th. Cir. 1986).
25  A plea which is the result of ineffective assistance of counsel is not
26  enforceable, and a defendant has the right to appeal or collaterally
27  attack via §2255. U.S. v. Littlefield, 105 F.3d. 529 (9th. Cir. 1997).
28  ///

III.  CONVICTION OBTAINED BY USE OF EVIDENCE GAINED PURSUANT
TO AN UNCONSTITUTIONAL SEARCH AND SEIZURE.

In heading IA dealing with"counsel's failaure to investigate"
there is a lengthy discussion of what would have been discovered if
an investigation was conducted. There is mentioned and discussed the
fact that this was an unconstitutional search and seizure. If the
DEA agents had "credible information" let's say arguendo, then that
information was based on the anonymous calls of September 5, 2000 and
October 19, 2000. The DEA agents had time to plan a surveillance op-
eration and, consequently had time to obtain a search warrant. Addi-
tionally, Mr. Valencia avers that he did not consent to the search of
his pickup truck, and whatever document he signed at the scene, was
the result of coercion and intimidation, and he was not able to read
it because of the darkness. Remember, Mr. Valencia was hand cuffed,
without explanation, before the DEA agents arrived on the scene. This
is, undoubtedly intimidation, So any permission to search is necessa-
rily tainted by the lack of "voluntariness". Defense counsel failed
to challenge the issue of permission to search. "In looking at the
factual issue of voluntariness, the court must be aware of the 'vul-
nerable subjective state' of the defendant as well as the possibility
of subtly coercive police questions". Schneckloth v. Bustamonte, 412
US at 229 (1973). The Tenth Circuit court of appeals held that "it is
clear that the Fourth Amendment's 'voluntariness' requires a showing
by the government that the defendant's consent is free of police coer-
cion and is voluntary in fact, so a valid waiver of Fourth Amendment
rights may not be presumed but may only be effected when government
discharges its burden of proving that defendant's consent is voluntary

in fact. <u>U.S. v. Carson</u>, 793 F.2d. 1150 (10th. Cir. 1986).

The seizure of any material as a result of an invalid or uncon-
stitutional search are  tainted, inadmissible as evidence, and sub-
ject to suppression as "fruits of the poisonous tree".

IV.     <u>CONVICTION OBTAINED BY USE OF EVIDENCE OBTAINED PUR-
SUANT TO AN UNLAWFUL ARREST.</u>

The reasons for the unlawfullness of this arrest have been pre-
viously mentioned and adequately discussed in IA. The bases for this
unlawful arrest include the lack of probable cause and failure to
read and advise petitioner of his Miranda rights. The use of this
evidence which resulted from these illegal and unconstitutional pro-
cedures resulted in the conviction of the respondent.

V.     <u>SELECTIVE PROSECUTION.</u>

The petitioner wonders why there were no co-defendants or co-con-
spirators arrested if the government believed that respondent was part
of a conspiracy. See Presentence Report #2 of Part A,-The Offense.
"the defendant and other co-conspirators, unlawfully, intentionally,
and knowingly combined, confederated, and agreed to import into the
United States from a place outside thereof, over 50grams of methamphe-
tamine, a Scedule II controlled substance". The defendant avers that,
even though he knew some of the participants (Imelda is his cousin),
he never combined, confederated, and/or agreed with anyone to import
methamphetamine into Guam. He said he was asked by Imelda to pick up
the "ice" from Edwin after it had already arrived into Guam, and was

paid by Imelda for his services. He admitted to having done it on two prior occasions, but did so because he was having financial problems and needed the money. He was basically a courier, and not part of a group. Despite Mr. Valencia's cooperation with the government in attempted "sting" operations, and electronic telephone recordings, etc. there never seemed to be any enthusiasm or genuine efforts on the part of the government in pursuing the arrests of the "conspirators". This give credence to the obvious,- Mr. Valencia was setup by one or more of those involved, and consequently became the "fall guy". This issue also has bearing on the nature of the charge "conspiracy to import", and the failure of defense counsel to investigate the nature of the charge and challenge it.

The Comprehensive Drug Abuse Prevention Control Act of 1970 §§ 952(a), 963 specifically states that "possession is not an element of the offense of knowingly and intentionally importing narcotic drugs in the US or of conspiracy to import narcotic drugs". And "if counsel fails to subject the prosecutor's case to meaningful adversarial testing, then there has been a denial of the Sixth Amendment right that makes the adversary process itself presumptively unreliable. <u>Davis v. Alaska</u>, 415 U.S. 308; 94 S.Ct. 1105 (1974).

CONCLUSION

Defense counsel, Robert E. Hartsock, representation of Mr. Valencia demonstrated incompetence and ineffectiveness, and fell below an objective standard of reasonableness measured by prevailing professional norms, and there is a reasonable probability that but for counsel's unprofessional performance the outcome of the proceedings would have been different, i.e., prejudice.

1    It appeared that from the onset that, for whatever reason, the

2  defense counsel had very little interest in effectively representing

3  Mr. Valencia. He seemed to believe whatever information the government

4  had and accepted whatever proffer they made. There seemed to be no

5  negotiation in the best interest of Mr. Valencia. A plea was offered

6  and without discussion Mr. Valencia was asked to sign it barely one

7  week after his arrest, and two weeks later was arraigned with a wai-

8  ver of Indictment and a signed plea agreement in place. End of case!!

9  Despite Mr. Valencia's full cooperation with the government leading

10 to many opportunities to arrest and indict the leaders of the opera-

11 tion, counsel did not try to advance his client's interests by wait-

12 ing get a better deal if, after a complete investigation and thorough

13 evaluation of the case, a guilty plea was determined to be the best

14 course of action. But he did not seek any further ples deal with the

15 attorney for the government. This, unto itself, is ineffective assis-

16 tance of counsel. If the court finds that no single instance of inef-

17 fective assistance of counsel rises to the level of a constitutional

18 violation, then petitioner submits that the cumulative effect of coun-

19 sel's actions reach this level under the Strickland standard. See

20 Harris By and Through Ramseyer v. Wood, 64 F.3d. 1432 (9th. Cir.1995)

21 (cumulative errors and omissions constitute ineffectiveness under

22 Strickland).

23      WHEREFORE, petitioner prays this Honorable Court set aside his

24 conviction and sentence, and order all relief deemed just and proper.

25

26 Dated: February 6, 2003,              Respectfully submitted,

27

28                                        Bernard Deleon Valencia

## CERTIFICATE OF SERVICE

I, Bernard Deleon Valencia, hereby certify that I have served a true
copy of this Motion Pursuant to Title 28 U.S.C., Section 2255 on
Mark E. Kondas, Assistant U.S. Attorney, (AUSA), Criminal Division,
Suite 500, Sirena Plaza, 108 Herman Cortez Ave., Hagatna, Guam 96910,
by depositing said copy into the intrainstitutional mail here at Eloy
Detention Center in Eloy, Arizona.


Dated: February 6, 2003.                    Bernard Deleon Valencia


                                    By: Bernard Deleon Valencia